IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BRAUN CONSTRUCTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:05-cv-129 |
| | ) | |
| RICHARD'S RESTORATION, INC., AAA WATER MOLD REMEDIATION, INC., and DANIEL RICHARDS,[1] | ) ) | |
| Defendants | ) | |

and

| | |
|---|---|
| RICHARD'S RESTORATION, INC., | ) |
| Cross-Claimant | ) |
| v. | ) |
| AAA WATER MOLD REMEDIATION, INC., and DANIEL RICHARDS, | ) ) |
| Cross-Defendants | ) |

---

[1] It now appears that Daniel Richards' name is actually "Daniel Richard." [*See, e.g.*, Doc. 12-3]; consequently, this defendant will be referred to as Daniel Richard throughout this memorandum and order, although his name will remain in the caption in its original form until an appropriate motion has been filed and granted.

# MEMORANDUM AND ORDER

In this diversity action, plaintiff, Braun Construction Services, Inc., (BCS), seeks compensatory damages in an amount of at least $405,535.10 (representing the value of unpaid rental services plus the value of the unreturned equipment) plus pre-judgment and post-judgment interest against defendants Richard's Restoration, Inc. (Richard's Restoration), AAA Water Mold Remediation, Inc. (AAA Water Mold), and Daniel Richard [*see* Doc. 1]. As an alternative to some of these compensatory damages, BCS seeks the immediate possession of the unreturned rental equipment [*see id.*, p.5]. Attached to the complaint is a copy of an agreement executed by the president of BCS, Sandy Braun, and Daniel Richard on August 18, 2004 [*see id.*, Ex. A].

Richard's Restoration filed an answer on April 20, 2005, primarily alleging that Daniel Richard did not have authority to enter into this rental contract [*see* Doc. 3]. Additionally, Richard's Restoration filed a cross-claim against the other two defendants [*see id.*, pp.6-7]. The record further reflects that, despite several attempts, Daniel Richard and AAA Water Mold have not yet been served with a copy of the summons and complaint.[2]

---

[2]Nevertheless, according to BCS, Daniel Richard, who is the registered agent for AAA Water Mold, has been contacted and "has agreed to cooperate with service of

This matter is presently before the court on motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Richard's Restoration [*see* Doc. 9]. As required by the local rules of this court, *see* E.D.TN. LR 7.1(a), Richard's Restoration has filed a memorandum of law in support of its motion [Doc. 11] and has also filed the affidavit of its president and sole shareholder, Lidda J. Marler [Doc. 10]. BCS has now responded to this motion [*see* Doc. 12], and has likewise filed the affidavit of its president, Sandy Braun [*see* Doc. 12-2], as well as the affidavit of Daniel Richard [*see* Doc. 12-3]. This matter is therefore ripe for adjudication. For the reasons that follow, the motion will be denied in its entirety.

I.

*Motion to Dismiss for Lack of Personal Jurisdiction*

A.

As a preliminary matter, BCS contends that Richard's Restoration failed to file its motion contesting personal jurisdiction in a timely manner. BCS relies on the clear language of Rule 12(b) which states: "A motion making any of these defenses [including lack of jurisdiction over the person] shall be made *before* pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b) (emphasis added).

---

process." [*See* Doc. 12, p.2].

The record reflects that Richard's Restoration filed the pending motion on October 7, 2005, more than five months after it had filed its answer to the complaint and its concomitant cross-claim against the two co-defendants. Thus, Richard's Restoration filed its pleading, *i.e.*, its answer, before filing its motion pursuant to Rule 12(b)(2) contrary to the unambiguous language of this rule. Nevertheless, it must be noted that this answer did specifically reserve the defense of lack of personal jurisdiction [*see* Doc. 3, p.1]. While normally a party must file a Rule 12(b)(2) motion before filing an answer, or simultaneously with the filing of the responsive pleading, "courts have allowed untimely motions if the defense has been previously included in the answer." 5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1361 (2004); *see also Cleveland Indus. Square, Inc. v. White*, 52 F.3d 324 (TABLE) (6th Cir.) (affirming district court's granting of motion to dismiss filed in October 1992 after parties had answered complaint in August 1992 raising a Rule 12(b)(6) defense), *cert. denied*, 516 U.S. 986 (1995).

Under these circumstances, the court will consider Richard's Restoration's motion to dismiss for lack of personal jurisdiction as if it were filed prior or simultaneously to the filing of its answer and cross-claim. Accordingly, BCS's objection on this procedural basis will be overruled.

B.

Richard's Restoration moves to dismiss this case for lack of *in personam* jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Richard's Restoration points out that it has never had any contacts with the State of Tennessee; that it has never entered into contracts in the State of Tennessee nor conducted any business whatsoever within this state or with any entities in this state; and that it has neither advertised nor solicited any form of business in Tennessee. Richard's Restoration thus contends that there is no basis in this record to support general *in personam* jurisdiction. Moreover, the only contact alleged between defendant Richard's Restoration and the State of Tennessee is the contract which is at issue in this matter. However, according to Richard's Restoration, this contract was entered into by Daniel Richard, an individual who did not have authority to bind Richard's Restoration under the contract. This court therefore does not, according to Richard's Restoration, have specific *in personam* jurisdiction over it.

As previously noted, Richard's Restoration has filed the affidavit of its president and sole shareholder, Lidda J. Marler, in support of its motion to dismiss as well as its motion for summary judgment [*see* Doc. 10]. In her affidavit, Ms. Marler testifies verbatim as follows:

* * *

5

3. Richard's Restoration is in the business of building repair and remediation. Richard's Restoration does not rent the equipment used in its business. Richard's Restoration owns all of the equipment it uses in the course and scope of its business.

4. Richard's Restoration has never contracted with any individuals or businesses in Tennessee.

5. Richard's Restoration has never advertised or solicited business in Tennessee.

6. Daniel Richard[] was employed part-time with Richard's Restoration from November 8, 2004, to February 4, 2005, as a certified mold inspector and mold remediator. His job duties including performing inspections for estimates and air tests for potential mold sites.

7. Daniel Richard[] has never had any authority to enter into any contracts on behalf of Richard's Restoration, nor has Richard's Restoration ever conveyed any information to any third parties portraying Daniel Richard[] as having this authority.

8. Richard's Restoration never conveyed any information to Plaintiff indicating that Defendant Daniel Richard[] had authority to bind Richard's Restoration under a contract.

9. Defendant Daniel Richard[] never entered into any contracts on behalf of Richard's Restoration during his employment with Richard's Restoration.

10. Richard's Restoration has never entered into any contracts with [BCS] nor has Richard's Restoration had any contract whatsoever with [BCS].

11. [BCS] never contacted anyone with Richard's Restoration to inquire whether Daniel Richard[] had the authority to enter into a contract on behalf of Richard's Restoration.

6

12. Richard's Restoration has never seen nor used any of the equipment which was rented by Daniel Richard[].

13. Richard's Restoration was not aware of the existence of this contract until March 19, 2005, when Richard's Restoration was served with the Summons in this matter.

[*See id.*].

In response to Ms. Marler's affidavit, BCS has first submitted the affidavit of its president, Sandy Braun, in which she testifies verbatim as follows:

* * *

2. BCS is a Tennessee corporation located in Alcoa, Tennessee. BCS provides building restoration services throughout Tennessee and the Southeast United States. It owns restoration equipment in Tennessee for its operations. Occasionally, BCS rents equipment to persons or entities in and outside Tennessee for restoration projects.

3. In or about August of 2004, I traveled to Orlando, Florida, and met with Dan Richard[], who on behalf of Richards Restoration, Inc., and AAA Water Mold Remediation, Inc., was interested in renting equipment from BCS. At that time, I saw that Dan Richard[] was driving a truck with the logo "Richard's Restoration," prominently painted on it.

4. Dan Richard[] told me he was the owner of Richard's Restoration, Inc.

5. Dan Richard[] also told me he had begun an affiliated business called AAA Water Mold Remediation, Inc., and that the rented equipment would be used on different projects by both Richard's Restoration, Inc., and AAA Water Mold Remediation, Inc.

6. Payment under the agreement attached to the complaint in the Lawsuit (the "Agreement") was to be made to BCS at 2143 Payne Avenue, Alcoa, Tennessee 37701, and the equipment was to be returned to Tennessee.

7. Richard's Restoration, Inc., through Dan Richard[], actually accepted the equipment rented under the Agreement.

8. The equipment rented under the Agreement came from Tennessee, and a portion of the equipment has been returned to Tennessee.

[*See* Doc. 12-2].

BCS has also filed the affidavit of defendant Daniel Richard in support of its response in which he testifies verbatim as follows:

\* \* \*

2. In 1996, Lidda J. Marler and I formed a Florida corporation known as Richard's Restoration, Inc. Lidda Marler was my girlfriend at the time.

3. Richard's Restoration, Inc. was named after me and I primarily operated [the] corporation's building repair and remediation business from 1996 through and including August of 2004. I believe the corporation was set up with me as a 49% shareholder, and Lidda Marler as a 51% shareholder.

8

4. During my operation of Richard's Restoration, Inc., I had, among other things, full access to the corporation's checking account; I had authority to, and often did, enter into agreements on behalf of the corporation; and some bills such as the corporation's telephone bills, were in my name, Daniel Richard, d/b/a Richard's Restoration, Inc.

5. During my operation of Richard's Restoration, Inc., I handled all of its insurance matters, procured insurance for it, entered into insurance agreements for it, and handled claims made on its behalf.

6. At the time the "BCS" agreement attached to the complaint in the Lawsuit (the "Agreement") was signed, I was entrusted with four Richard's Restoration's trucks. These trucks all had the logo, "Richard's Restoration" prominently painted on them.

7. In August of 2004, I spoke with Sandy Braun of BCS about renting equipment from BCS for certain building restoration work in Orange County, Florida.

8. I later met with Sandy Braun in Orange County, Florida. At the time we met I was driving one of Richard's Restoration's trucks entrusted to me by Richard's Restoration, Inc. I later signed the agreement on behalf of Richard's Restoration, Inc., and an affiliated company known as AAA Water Mold Remediation, Inc.

9. At the time I signed the Agreement, I had actual authority on behalf of Richard's Restoration, Inc., to enter into that agreement.

10. I agreed on behalf of Richard's Restoration, Inc., to make payments under the agreement to BCS in Alcoa, Tennessee.

11. Sometime after the agreement was entered into, however, my relationship with Lidda Marler seriously deteriorated. She seized the corporate records of

9

> Richard's Restoration, Inc., and its assets and banking accounts. Since that time, I have not conducted any further business on behalf of Richard's Restoration, Inc., and have not been able to satisfy the obligations of Richard's Restorations, Inc., under the agreement.
>
> 12. The equipment that was the subject of the agreement was used by Richard's Restoration, Inc.; however, I do not know the location of that equipment at this time.

[*See* Doc. 12-3].

### C.

It is well settled that plaintiff has the burden of establishing the court's personal jurisdiction over the defendant when personal jurisdiction is challenged in a Rule 12(b)(2) motion. *See, e.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). Where, as in this case, the court decides the issues without conducting an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [Richard's Restoration] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). Under these circumstances, the court will construe the facts in the light most favorable to the plaintiff, *see id.*, and the burden

on the plaintiff is relatively slight. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988).

A federal court may exercise personal jurisdiction over a defendant in a diversity case only if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (citations omitted). Tennessee courts construe the state's long-arm statute to be co-extensive with the limits of due process. *See* TENN. CODE ANN. § 20-2-214(a)[3]; *Bridgeport Music, Inc. v. Still N The Water Pub*, 327 F.3d 472, 477 (6th Cir. 2003); *J. I. Case Corp. v. Williams*, 832 S.W.2d 530, 532 (Tenn. 1992). Thus, this court may exercise jurisdiction over Richard's Restoration if personal jurisdiction is consistent with the requirements of federal due process.

The next question now becomes whether the assertion of jurisdiction over Richard's Restoration would violate due process notions of fairness and substantial justice. *See, e.g., First Nat'l Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir. 1982). The Supreme Court has repeatedly held that:

---

[3]"Persons who are nonresidents of Tennessee ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from ... [a]ny basis not inconsistent with the constitution of this state or of the United States." TENN. CODE ANN. § 20-2-214(a).

11

> Due process requires that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical question a minimum-contacts analysis seeks to answer is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It has long been held that due process "protects an individual's liberty interests in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Thus, "[b]y requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' *id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (STEVENS J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will

12

not render them liable to suit[.]'"  *Id.* at 472 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

In analyzing the due process limits of personal jurisdiction, a distinction is made between "general" jurisdiction and "specific" jurisdiction.  *See id.* at 473 n.15;  *see also Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (noting that a distinction between general and specific jurisdiction exists for the purpose of due process analysis).  A federal court has general jurisdiction when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state.  *See, e.g., Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952);  *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (citing *Third Nat. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  On the other hand, specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

In this case, it readily appears that the contacts of Richard's Restoration with Tennessee are not of a "continuous and systematic" nature so that Tennessee

13

could not constitutionally maintain general jurisdiction over this defendant in an action unrelated to its Tennessee contacts with respect to BCS. Again, the record reflects that this corporation does not do business in Tennessee, nor does it have an office, plant or other place of business in Tennessee. It does not have any officers or employees residing in Tennessee, nor does it have a postal address or telephone number in Tennessee, nor does it solicit business or advertise in Tennessee. This defendant does not maintain a bank account or any other financial holding in Tennessee. Therefore, BCS must establish a *prima facie* case of specific jurisdiction as to this defendant.

In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), a case of specific jurisdiction, the Sixth Circuit established, using relevant Supreme Court precedents, a three-part test for determining whether, consistent with due process, personal jurisdiction may be exercised:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

14

401 F.2d at 381. In the court's view, plaintiff has met the requirements of this test to bring Richard's Restoration within the jurisdiction of this court.

The first *Mohasco* criterion requires that a defendant must have "purposely avail[ed itself] of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* The "purposeful availment" requirement

> ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts ... or of the "unilateral activity of another party or a third person." Thus, where the defendant "deliberately" has engaged in significant activities within a State ... or has created "continuing obligations" between himself and residents of the forum ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475-76 (citations and foot notes omitted). The Court in *Burger King* also explained that "an individual's contract with an out-of-state party *alone*" cannot "automatically establish minimum contacts." *Id.* at 478 (emphasis in original). *See also CompuServe, Inc.*, 89 F.3d at 1265 ("merely entering into a contract ... would not, without more, establish sufficient minimum contacts"). The emphasis in the purposeful availment inquiry is whether the defendant has engaged in "some overt actions connecting the defendant with the forum state." *Dean v.*

15

*Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998). If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant. *See Burger King*, 471 U.S. at 476; *CompuServe*, 89 F.3d at 1265. Finally, it must be noted that the "dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately 'chose to deal' with the plaintiff." *Nationwide Mut. Ins. Co.*, 91 F.3d at 796 (citing *Mohasco*, 401 F.2d at 382).

Here, the record does not indicate whether BCS or Richard's Restoration, through Dan Richard, initiated the contract between these entities. Mr. Richard's affidavit does indicate, however, that Richard's Restoration purposely availed itself of acting or causing a consequence in Tennessee when it entered into a contract to rent equipment from Tennessee, to make payments to BCS in Tennessee, and to return the equipment to Tennessee. By failing to make the rental payments set forth in the contract, and by failing to return all of the equipment to BCS, the court concludes that Richard's Restoration should have reasonably anticipated being haled into a Tennessee court. Without question, Richard's Restoration's failure to make these payments in Tennessee and its failure to return the rental equipment to Tennessee have a substantial enough connection with this

16

state to make the exercise of jurisdiction over Richard's Restoration reasonable. Therefore, BCS has satisfied the first prong of the *Mohasco* test.

The second prong of the *Mohasco* test requires that the cause of action arose from the defendant's activities within the forum. 401 F.2d at 381. "The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Third Nat'l. Bank*, 882 F.2d at 1091 n.2. In this case, the court finds that this test is easily satisfied because BCS's claims arise from Richard's Restoration's contract with a Tennessee corporation and its failure to make the rental payments as agreed upon and its further failure to return the rental property to Tennessee. The court's conclusion on this issue is reinforced by Tennessee's long-arm statute which reaches tortious acts committed outside the state which result in injury within the state. *See* TENN. CODE ANN. § 20-2-214(a)(2) ("tortious act or omission within this state"); *see also* § 20-2-214(a)(1) and (6). By failing to return the rental equipment to Tennessee as required under the contract, Richard's Restoration has committed the tort of conversion. Consequently, BCS's causes of action arise directly from the forum related activities of Richard's Restoration.

Finally, the third prong of *Mohasco* requires that Richard's Restorations' contacts with Tennessee be substantial enough to make it reasonable to subject it

17

to the personal jurisdiction of Tennessee courts. Significantly, "[a]n inference arises that the third factor is satisfied if the first two requirements are met." *Bird v. Parsons*, 289 F.3d at 875. In addition, the relevant factors to be considered with respect to this factor are the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *See id.*

In this case, the State of Tennessee has a strong interest in providing a judicial forum to resolve an action based on this defendants' failure to make payment to a Tennessee corporation in Tennessee - as required by the contract - and to return its equipment to Tennessee - as required by the contract. BCS has been significantly impacted by the breach of contract and conversion purportedly committed by Richard's Restoration. The court finds that it would not be unfair for Richard's Restoration to litigate these issues in Tennessee.

Therefore, for the reasons foregoing, defendants' motion to dismiss for lack of *in personam* jurisdiction will be denied.

18

II.

*Alternative Motion for Summary Judgment*

In support of this prong of its motion, Richard's Restoration contends that Daniel Richard did not have authority to enter into the underlying contract. Again, Richard's Restoration supports its position on this issue through the affidavit of its president, Lidda Marler, who testifies, among other things, that she is the president and sole shareholder and that Daniel Richard did not have any authority to enter into any contracts on behalf of Richard's Restoration during the time in question.

However, BCS has filed the countervailing affidavit of Daniel Richard in which he testifies, among other things, that Richard's Restoration was named after him; that he had operated the business for several years until and including the time that the contract was executed; and that he was entrusted with and used the business trucks prominently bearing its logo. More importantly, Mr. Richard testifies that he did in fact enter into the agreement at issue with BCS and that he did so on behalf of RR. Mr. Richard's affidavit also indicates that he operated the business and was even entrusted with several of its business trucks, which prominently displayed the business logo. As previously noted, Ms. Braun, BCS's president, traveled to Florida and met with Daniel Richard, and saw Mr. Richard with one of the

19

trucks of Richard's Restoration prior to executing the contract. Additionally, Ms. Braun testifies that she knew she was dealing with Mr. Richard for whom Richard's Restoration was apparently named.

In considering a motion for summary judgment, the court must consider the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Here, BCS has submitted two affidavits establishing at the very least a genuine issue of material fact regarding the authority of Daniel Richard to enter into the subject contract on behalf of Richard's Restoration. Defendants' motion for summary judgment must therefore be denied at this time.

### III.
### *Conclusion*

For the reasons foregoing, the motion to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment [Doc. 9] filed by Richard's Restoration is hereby DENIED in its entirety. *See* Fed. R. Civ. P. 12(b)(2) and 56.

**E N T E R :**

                                            *s/ James H. Jarvis*
                                      UNITED STATES DISTRICT JUDGE